JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| I/P ENGINE, INC., | 13 CV 688 |
| Plaintiff, | Civ. Action No. _____ |
| v. | |
| MICROSOFT CORPORATION, | COMPLAINT |
| Defendant. | Jury Trial Demanded |

RECEIVED JAN 31 2013 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff I/P Engine, Inc. ("I/P Engine") hereby makes this complaint against Defendant Microsoft Corporation ("Microsoft") as follows:

## NATURE OF ACTION

1. This is a patent infringement action in which I/P Engine seeks compensatory damages, past and future, amounting to no less than reasonable royalties. In the search engine industry, search engines seek to place the high quality advertisements in the best positions because such placements are critical to attracting advertisers, pleasing end users and producing search advertising revenues, which are the primary source of revenue for search engines. Andrew K. Lang and Donald M. Kosak, inventors of U.S. Patent Nos. 6,314,420 ("the '420 patent") and 6,775,664 ("the '664 patent") (collectively "the patents-in-suit"), invented a relevance filtering technology that is used in the search engine industry, and that has become the dominant technology used to place high quality advertisements in the best positions and thereby generate substantial revenue. Microsoft has known about the patents-in-suit for years, and despite such knowledge, continued to practice the invention unlawfully. This patent infringement action seeks remedies for Microsoft's unlawful taking.

## JURISDICTION AND VENUE

2. This action arises under the United States Patent Act, codified at 35 U.S.C. § 1 et seq., and in particular, 35 U.S.C. §§ 271 and 281-285.

3. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Microsoft because, on information and belief, Microsoft has transacted and continues to transact business in this District, has committed acts of infringement in this District, and continues to commit acts of infringement in this District.

5. Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, on information and belief, Microsoft has transacted and continues to transact business in this District, advertises and solicits business in this District, has committed and continues to commit acts of infringement in this District, and has established minimum contacts with this District.

## PARTIES

6. I/P Engine is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its corporate headquarters and principal place of business in New York, New York. I/P Engine's witnesses and documents reside in New York, New York.

7. On information and belief, Microsoft is a corporation organized under the laws of the State of Washington, with its corporate headquarters and principal place of business at One Microsoft Way, Redmond, Washington 98052-7329. On information and belief, Microsoft employs people in this District.

## FACTUAL BACKGROUND

### The Inventors' Involvement in Early Search Companies

8. I/P Engine is a privately held, wholly-owned subsidiary of Vringo, Inc., a publicly

2

traded company that employs Mr. Lang as the company's Chief Technology Officer. Mr. Kosak is a technology advisor to Vringo, Inc. I/P Engine purchased the patents-in-suit from Lycos, Inc. ("Lycos"), an early participant in the Internet search industry.

9. Messrs. Lang and Kosak were researchers and software developers during the early days of the Internet search industry.

10. In 1995, Mr. Lang was a Carnegie Mellon doctoral student researching his dissertation on adaptive filtering and recommendation system technologies. At that time, the Internet search industry was growing rapidly.

11. One of Mr. Lang's thesis advisers, Professor Michael Mauldin, recommended that Mr. Lang start his own company. Shortly thereafter, Mr. Lang did so, leaving Carnegie Mellon to form Empirical Media Corporation, which later was renamed WiseWire Corporation ("WiseWire").

12. Mr. Kosak was the first technologist hired into WiseWire's founding team. Mr. Kosak added years of experience in the commercial search engine field to the WiseWire team having previously led several projects directed to search technologies.

13. In the mid-to-late 1990s, the amount of content (e.g., web pages) available on the Internet was relatively small compared to today. Users frequently accessed Internet web pages by visiting portal sites, which presented content categorized directories through which the users could select links to available web pages.

14. Lycos was one of the leading portal sites of this time. Mr. Lang's Carnegie Mellon professor, Michael Mauldin, was Lycos' founder.

15. Lycos launched its website in 1994. Lycos' website included a directory-based portal and also a query-based search engine; both of which provided access to its content catalog.

16. By 1996, Lycos' content catalog had grown substantially, and Lycos was one of the largest websites of its kind.

17. As the volume of available Internet content continued to grow and the rate of that growth increased, manual categorization processes presented problems in terms of the amount of material to be categorized and the accuracy of such categorization.

18. As part of managing its content categorization processes, Lycos engaged Messrs. Lang and Kosak through WiseWire to develop filtering techniques to more efficiently, and automatically, categorize content for Lycos' directories including for its advertisements.

19. After working together on several projects for Lycos' website, Lycos acquired WiseWire. Messrs. Lang and Kosak then joined Lycos, Mr. Lang as Chief Technology Officer and Mr. Kosak as Senior Director of Engineering.

20. The volume of Internet content and Internet usage eventually inundated directory-based portal sites, and query-based search engines became prominent. Lycos, however, decided to go another direction with its business. Lycos continued as a major portal provider and stopped investing money into search engine/system research and development, including the technology developed by Messrs. Lang and Kosak. Lycos focused instead on portal network operations with regional sites, chat services, personal home pages, horoscopes and other features that would supplement these offerings.

### The '420 and '664 Patents

21. Before others in the search engine industry, Messrs. Lang and Kosak conceived of improved technologies needed to produce better search results for users, such as advertising search results. They adapted their filtering techniques to apply to search systems and invented filtering systems and methods that: (i) filter items for content relevancy to a search query or to a

4

"wire," (ii) provide feedback information from prior users, and in filtering the items, (iii) combine the provided feedback information with the content relevancy to determine whether (or where) an item should be returned in a search results response to the query or the "wire" ("Lang/Kosak Relevance Filtering Technology"), as covered by the claims of the '420 and '664 patents.

22. The '420 patent is directed to search engine systems and methods that incorporate the Lang/Kosak Relevance Filtering Technology to provide improved search results to user queries.

23. The '664 patent, which is a related patent to the '420 patent, is also directed to search engine systems and methods incorporating the Lang/Kosak Relevance Filtering Technology.

24. The Lang/Kosak Relevance Filtering Technology is substantially better than other prior systems such as bid-based pay per click (PPC) search advertising systems.

25. And search engines such as Microsoft and Google have incorporated the Lang/Kosak Relevance Filtering Technology, as claimed by the '420 and '664 patents, within their own search and search advertising systems to provide better results.

26. Claim 10 of the '420 patent, for example, covers, in part, a search engine system that filters results based on a combination of "informons on the basis of applicable content profile data for relevance to the query" and "collaborative feedback data from system users relative to informons considered by such users."

27. The accused systems in this litigation use the Lang/Kosak Relevance Filtering Technology by filtering and presenting search advertising results based on a combination of content and collaborative data.

28. At least since 2006, while Lycos was the owner of the patents-in-suit, Lycos marked the '420 and '664 patents on its website.

29. Almost all major search advertising systems operating today, including Microsoft's search advertising systems, incorporate the Lang/Kosak Relevance Filtering Technology. Microsoft and other search engines market their search advertising systems based on the features of the Lang/Kosak Relevance Filtering Technology covered by the '420 and '664 patents.

30. Microsoft has used and continues to use search advertising systems that adopt the Lang/Kosak Relevance Filtering Technology.

31. For example, Microsoft adopted the Lang/Kosak Relevance Filtering Technology and currently uses it with Microsoft's use of "Quality Score." Microsoft's search advertising systems filter advertisements by using "Quality Score," which combines content and collaborative data.

32. Microsoft's search advertising systems incorporating "Quality Score" – including products such as Bing Ads (formerly named AdCenter) – generate advertisements and associated links when end users search from websites including, for example, Microsoft's search webpage, www.bing.com.

33. Microsoft additionally allows third party companies to display advertising search results in response to search queries made on the third party companies' websites.

34. On information and belief, after adopting the Lang/Kosak Relevance Filtering Technology, Microsoft's search engine market share grew and its revenues increased.

35. On information and belief, Microsoft learned of the '420 patent during the patent prosecution of at least nine of its own patents.

36. Microsoft is the original assignee of nine patents, U.S. Patent Nos. 7,627,556, 7,529,732, 7,349,895, 7,499,916, 8,001,121, 6,970,860, 7,827,191, 8,244,766, and 7,908,663, all of which cite the '420 patent as prior art. As an example, during the patent prosecution of U.S.

Patent No. 6,970,860 ("the '860 patent"), the U.S. Patent and Trademark Office ("PTO") rejected Microsoft's patent application on April 24, 2003, citing the '420 patent as prior art, and Microsoft responded on October 2, 2003 to the PTO's rejection by discussing the content of the '420 patent.

37. Further, on information and belief, Microsoft learned of the '664 patent during the patent prosecution of at least eleven of its own patents.

38. Microsoft is the original assignee of eleven patents, U.S. Patent Nos. 7,584,221, 7,734,633, 7,840,569, 7,603,616, 7,827,181, 7,792,833, 7,739,277, 7,716,198, 7,599,917, 7,761,448, and 8,082,246, all of which cite the '664 patent as prior art. As an example, during the patent prosecution of U.S. Patent No. 7,716,198 ("the '198 patent"), Microsoft listed the '664 patent as prior art on an Information Disclosure Statement mailed to the PTO on December 18, 2008.

39. Even further, on information and belief, Microsoft learned of the '420 and '664 patents a second time when I/P Engine received a jury verdict for patent infringement against Google's search advertising system on November 6, 2012 in the U.S. District Court for the Eastern District of Virginia.

## FIRST CLAIM FOR RELIEF

(Infringement of U.S. Patent No. 6,314,420)

40. I/P Engine incorporates by reference the allegations contained in paragraphs 1 through 39 above.

41. The '420 patent entitled "Collaborative/Adaptive Search Engine" issued on November 6, 2001, naming Andrew K. Lang and Donald M. Kosak as inventors. A copy of the '420 patent is attached as Exhibit A. I/P Engine is the assignee of all rights, title and interests in

and to the '420 patent, and holds the right to sue and recover for past, present, and future infringement thereof.

42. On information and belief, in the United States and in this District, Microsoft has directly infringed, and continues to directly infringe, at least one claim of the '420 patent, e.g., claim 10, by making, using, providing, selling and/or offering for sale products, services, methods, and systems including, without limitation, its search advertising systems, Bing Ads. Microsoft is liable for its infringement of the '420 patent in violation of 35 U.S.C. § 271.

43. On information and belief, Microsoft is further liable as an active inducer of infringement of the '420 patent in violation of 35 U.S.C. § 271 by knowingly taking active steps to encourage and facilitate direct infringement by others, including third party publishers of the Microsoft Media Network and/or by users of Microsoft's infringing systems.

44. On information and belief, Microsoft is a contributory infringer of the '420 patent in violation of 35 U.S.C. § 271 by making, using, selling, and/or offering for sale within the United States components that embody a material part of the inventions described in at least one claim of the '420 patent, that are known by Microsoft to be specially made or specially adapted for use in infringement of at least one of the claims of the '420 patent, and that are not staple articles or commodities suitable for substantial, non-infringing use.

45. Since at least as early as April 24, 2003, when the PTO rejected the patent application that issued as the '860 patent, Microsoft has had actual and constructive knowledge of the '420 patent.

46. On information and belief, because Microsoft had actual and constructive knowledge, Microsoft has willfully undertaken and carried out its infringing activities with knowledge of the '420 patent and in total disregard of I/P Engine's lawful rights under the '420

patent.

47. I/P Engine has been damaged by Microsoft's infringement, and will continue to be damaged by Microsoft's infringement, of the '420 patent, and thus is entitled to recover damages from Microsoft to compensate it for the infringement.

48. Pursuant to 35 U.S.C. § 284, I/P Engine is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

49. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and I/P Engine is entitled to an award of attorneys' fees.

## SECOND CLAIM FOR RELIEF

(Infringement of U.S. Patent No. 6,775,664)

50. I/P Engine incorporates by reference the allegations contained in paragraphs 1 through 49 above.

51. The '664 patent entitled "Information Filter System and Method for Integrated Content-Based and Collaborative/Adaptive Feedback Queries" issued on August 10, 2004, naming Andrew K. Lang and Donald M. Kosak as inventors. A copy of the '664 patent is attached as Exhibit B. I/P Engine is the assignee of all rights, title and interests in and to the '664 patent, and holds the right to sue and recover for past, present, and future infringement thereof.

52. On information and belief, in the United States and in this District, Microsoft has directly infringed, and continues to directly infringe, at least one claim of the '664 patent, e.g., claim 1, by making, using, providing, selling and/or offering for sale products, services, methods, and systems including, without limitation, its search advertising systems, Bing Ads. Microsoft is liable for its infringement of the '664 patent in violation of 35 U.S.C. § 271.

53. On information and belief, Microsoft is further liable as an active inducer of infringement of the '664 patent in violation of 35 U.S.C. § 271 by knowingly taking active steps to encourage and facilitate direct infringement by others, including third party publishers of Microsoft's Microsoft Media Network and/or users of Microsoft's infringing systems.

54. On information and belief, Microsoft is a contributory infringer of the '664 patent in violation of 35 U.S.C. § 271 by making, using, selling, and/or offering for sale within the United States components that embody a material part of the inventions described in at least one claim of the '664 patent, that are known by Microsoft to be specially made or specially adapted for use in infringement of at least one of the claims of the '664 patent, and that are not staple articles or commodities suitable for substantial, non-infringing use.

55. Since at least as early as December 18, 2008, when Microsoft mailed an Information Disclosure Statement to the PTO during the patent prosecution of the patent application that issued as the '198 patent, Microsoft has had actual and constructive knowledge of the '664 patent.

56. On information and belief, because Microsoft had actual and constructive knowledge, Microsoft has willfully undertaken and carried out its infringing activities with knowledge of the '664 patent and in total disregard of I/P Engine's lawful rights under the '664 patent.

57. I/P Engine has been damaged by Microsoft's infringement, and will continue to be damaged by Microsoft's infringement, of the '664 patent, and thus is entitled to recover damages from Microsoft to compensate it for the infringement.

58. Pursuant to 35 U.S.C. § 284, I/P Engine is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

59. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and I/P Engine is entitled to an award of attorneys' fees.

## DEMAND FOR JURY TRIAL

60. I/P Engine hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, I/P Engine prays for the following relief:

1. Pursuant to 35 U.S.C. § 271, a Judgment that Microsoft infringes and has infringed at least one claim of the '420 patent and/or at least one claim of the '664 patent;

2. Pursuant to 35 U.S.C. § 284, compensatory damages, past and future, amounting to no less than reasonable royalties, prejudgment interest, and/or any other available damages based on any form of recoverable economic injury sustained by I/P Engine as a result of Microsoft's infringement;

3. Pursuant to 35 U.S.C. § 285, an award of I/P Engine's costs and attorneys' fees incurred in this action; and

4. For such other and further relief as this Court deems just and proper.

DATED this 31st day of January 2013

Respectfully submitted,

By: _____
Dawn Rudenko Albert (DR8290)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
albertd@dicksteinshapiro.com

Counsel for Plaintiff I/P Engine, Inc.